BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE:  AME CHURCH RETIREMENT ) | MDL NO: | |
| PLAN LITIGATION                ) | | |
| ) | | |

**PLAINTIFF REV. PEARCE EWING'S
BRIEF IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS
PURSUANT TO 28 U.S.C. § 1407 TO THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TENNESSEE FOR
<u>COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS</u>**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiff Rev. Pearce Ewing ("Movant") respectfully submits this brief in support of his Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 to the United States District Court for the Western District of Tennessee for Coordinated or Consolidated Pretrial Proceedings.

Movant seeks transfer and assignment of all pending Actions against Newport Group, Inc., Symetra Financial Corporation, Rev. Jerome V. Harris, and the African Methodist Episcopal Church, Inc. ("AMEC") related to the recent financial scandal surrounding AMEC and AMEC's Retirement Fund identified in numerous cases filed nationwide and as listed in the Schedule of Actions, as well as any subsequently filed actions involving similar facts or claims (collectively "Actions").  There are presently no fewer than five substantially similar Actions filed by plaintiffs on behalf of proposed classes in at least four different federal district courts alleging similar wrongful conduct by the Defendants and other related parties.  Movant is Plaintiff in the first-filed federal case, which was filed in the United States District Court for the Western District of Tennessee. Importantly here, that District encompasses the headquarters location of AMEC's Department of Retirement Services, which oversees AMEC's retirement fund (the "Fund").

All Actions involve common questions of law and fact arising from the mismanagement and improper oversight of the Fund, harming AMEC's ministers and other employees, who recently learned that over $90 million dollars is missing from the Fund; that all disbursements are paused without notice and without indication of when they will be reinstated; and that their career retirement savings are in serious jeopardy. The current Actions seek redress for these individuals, including seeking to restore the Fund to the amount that it should be but for the actions of Defendants, how to restore the fund, and who of the Defendants is liable for the restoration.

Accordingly, Movant seeks the consolidation and transfer of the Actions to the Western District of Tennessee, where AMEC's Retirement Fund Department is headquartered, the first filed Action is venued, the majority of witnesses are located, and substantial acts in furtherance of Defendants' alleged improper conduct occurred. Movant also seeks consolidation and transfer because all of the Actions filed against Defendants contain common allegations and common questions of fact. Moreover, because of the widespread nature of Defendants' breaches and the likely impact to individuals in many, if not all, of the 50 states, tag-along cases are virtually certain to be filed in the future.

**I.   BACKGROUND**

These Actions arise out of the breaches of fiduciary duties and negligent conduct of the Defendants in managing the AMEC Retirement Fund of the plaintiffs and putative class members. The plaintiffs in these Actions are ministers, elders, and other employees of AMEC who have lost retirement funds that were invested in the Fund. The significance of Defendants' actions is further underscored by the terms of the plaintiffs' employment because AMEC required that a percentage of the plaintiffs' income be paid into the Fund. Put another way, Movant and other putative class members had no choice but to contribute. Further, many plaintiffs and class members chose to

invest an additional specified portion of their income each pay period into the Fund, thereby providing Defendants more monies.

Defendants directly owed duties to plaintiffs, including fiduciary duties, to conduct due diligence, monitor investments, and oversee and audit the Fund and its trustee(s) or managers, in order to assure that that the Fund was protected and that plaintiffs had access to their retirement funds when it came time for appropriate payments, withdrawals, or rollovers. The Defendants had the power to monitor, review, dismiss, appoint, and control the operations of various trustee(s) whose responsibility it was to act in the best interests of the plaintiffs. But, as now known, even though Defendants oversaw and controlled the investments in the Fund, they did not adequately monitor or oversee the Fund. The Defendants in this action are each responsible for the fund's massive losses and the resulting harm to Movant and the putative class members.

**A. AME Church and Its Retirement Plan**

The African Methodist Episcopal denomination grew out of the Free African Society, which was established in Philadelphia in 1787. https://www.ame-church.com/our-church/our-history/ (last accessed April 2, 2022). Today, AMEC's membership is spread across 20 Episcopal Districts in 39 countries on 5 continents. *Id.* AMEC's work is administered by 21 active bishops and nine General Officers who manage the Church's departments, which include its Department of Retirement Services. *Id.*

Beginning in the mid-1960s, AMEC provided a retirement plan for its eligible employees. The plan required AMEC's ministers, bishops, officers, elders, and other employees of AMEC or AMEC-related educational institutions or programs to enroll. The plan was funded by a percentage of each eligible employee's annual income and additional elective contributions made by eligible employees. Over time, the retirement plan evolved and by the mid-1990s, the plan was renamed

the "African Methodist Episcopal Church Retirement Plan" (the "Plan"). AMEC's Department of Retirement Services was responsible for overseeing and administering the fund, and it retained numerous third parties over the years to assist with those responsibilities. AMEC and the third-parties engaged to help administer the program regularly sent statements to eligible employees with funds in the retirement program. In June 2021, AMEC represented that the retirement fund had over $120,000,000 in assets. However, just weeks later it notified plan participants that distributions were being frozen for the time being due to "irregularities" that had been uncovered.[1] Although the details are still murky, AMEC apparently has been unable to locate approximately 70% of the funds that were supposedly in the retirement fund.[2]

### B. The Current Actions

As a result of the funds missing from the AMEC retirement fund, five separate class action lawsuits have been filed across the United States in the last month. More are likely to follow. While the claims differ slightly (and immaterially) from complaint to complaint, each Action identifies substantially the same defendants – the Newport Group, Inc., Symetra Financial Corporation, Rev. Harris (the chair of the AME Department of Retirement Services from 2002-2021), AMEC, and various bishops within AMEC that had oversight responsibility for the retirement program at various points in time,[3] alleges materially identical facts, and seeks certification of nationwide

---

[1] https://www.wsj.com/articles/ame-church-halts-retiree-payouts-amid-probe-into-missing-funds-11646913600
[2] https://richmondfreepress.com/news/2022/mar/17/report-ame-church-suspends-payments-retirees-inves/
[3] *Jackson v. Newport Group, Inc., et al.,* identified the same defendants as *Ewing v. Newport Group, Inc., et al. See Jackson v. Newport Group, Inc., et al.,* No. 2:22-cv-02174, Dkt. No. 1 (W.D. Tenn. Mar. 22, 2022). Another pending action names additional defendants including specific individuals related to AMEC and departments within AMEC: Bishop Samuel L. Green, Sr., African Methodist Episcopal Church Ministerial Retirement Annuity Plan, African Methodist Episcopal Church Department of Retirement Services, General Board of the African Methodist Episcopal Church, and Council of Bishops of the African Methodist Episcopal Church. *See Alexander v. Harris, et al.,* No. 8:22-cv-00707-TJS, Dkt. No. 1 (S.D. Md. Mar. 22, 2022). The fourth filed case includes all of the same defendants as *Ewing v. Newport Group, Inc., et al.*, and also includes Bishop Samuel L. Green. *Russ et. al v. Newport Group, Inc., et al.*, No. 3:22-cv-00375, Dkt. No. 1 (M.D. Fla. March 31, 2022). The fifth filed case includes all of the same defendants as *Ewing*, and also adds several additional bishops, and two additional entities that purportedly were administrators of the AME retirement plan at certain points in time. *Boyd v. Newport Group, Inc., et. al*, No. 3-22-cv-00179, Dkt. No. 1 (E.D.Va. April 1, 2022).

and/or statewide classes comprised of ministers and other AME employees who have lost retirement funds that were invested in the Fund.

Consistent with the Panel's decisions in similar breach of fiduciary duty litigation, Plaintiff seeks transfer of the Actions to the United States District Court for the Western District of Tennessee for coordinated or consolidated pretrial proceedings. Satisfying the standard set forth in 28 U.S.C. § 1407, all of the Actions filed involving AME's retirement fund contain common questions of fact and the convenience of parties and witnesses and promotion of just and efficient conduct of the actions is supported by transfer to the Western District of Tennessee. Lastly, this situation has received a great deal of publicity[4] and class members are still learning about the financial impact from AMEC's actions, further increasing the likelihood that tag-along cases will be filed in the near future.

## II.  LEGAL STANDARD

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, Section 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

*Id.*; *see also In re Nifedipine*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).

---

[4] Numerous news outlets have published articles regarding AMEC's halting of retirement fund payouts and its investigation into the missing funds. *See*, *e.g*, *AME Church Halts Retiree Payouts Amid Probe Into Missing Funds*, Wall Street Journal (last accessed Apr. 1, 2022), https://www.wsj.com/articles/ame-church-halts-retiree-payouts-amid-probe-into-missing-funds-11646913600.

5

### III. ARGUMENT

The Actions, and the tag-along actions that likely will follow, are appropriate for Section 1407 transfer because they involve common issues and transfer will benefit the parties, witnesses, and courts. Transfer to that District is further proper because AMEC's Department of Retirement Services' is headquartered in the Western District of Tennessee, many key witnesses and documents are no doubt located in that jurisdiction, and that District does not currently have any MDLs.

#### A. <u>Transfer Is Appropriate Under 28 U.S.C § 1407.</u>

"The purpose of § 1407. . . is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Centralization is meant to "eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017).

Pretrial transfer under section 1407 is appropriate and necessary here. The Actions involve similar facts, Defendants, proposed classes and proposed relief. Absent transfer, the parties will incur excessive costs due to duplicative discovery and will face the risk of inconsistent rulings on a variety of matters, and District courts will unnecessarily expend judicial resources.

Further, the Panel has routinely transferred for coordination similar breach of fiduciary duty cases related to pension funds and retirement plans. *See*, *e.g.*, *In re Meridian Funds Grp. Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 645 F. Supp. 2d 1360, 1361 (J.P.M.L. 2009) (consolidating four actions where "[a]ll actions share factual questions relating to whether defendants … breached their fiduciary duties to plaintiffs with respect to investments[.]"); *In re H*

*& R Block, Inc., Express IRA Mktg. Litig.*, 444 F. Supp. 2d 1339, 1340 (J.P.M.L. 2006) ("All actions contain allegations that defendants breached fiduciary duties[.]"); *In re Standard Auto. Corp. Retiree Benefits "ERISA" Litig.*, 431 F. Supp. 2d 1357, 1358 (J.P.M.L. 2006) (consolidating two actions where "[c]laims in both actions arise out of allegations of breach of fiduciary duties[.]")

As these Actions share common factual allegations and causes of actions that arise from the same financial mismanagement of the Retirement Fund by AMEC and others, transfer for coordinated and consolidated pretrial proceedings is appropriate.

### 1. The Actions Involve Common Factual Issues.

Each of the constituent Actions will require determinations of whether the Defendants breached their fiduciary duties to the ministers and other AMEC employees who contributed to the Retirement Fund and whether Defendants were negligent in managing and overseeing the Retirement Fund.

Common questions predominate in the Actions, including:

- Whether Defendants breached their fiduciary duties;

- Whether the Defendants were negligent in failing to perform adequate due diligence in relation to the Fund;

- Whether class members have been injured by Defendants' challenged conduct;

- Whether plaintiffs and putative class members are entitled to damages, treble damages, civil penalties, punitive damages, and/or injunctive relief;

- Whether plaintiffs and putative class members are entitled to injunctive relief, including an accounting; and

- Whether class certification is appropriate.

Adjudicating these and other common issues in a single transferee district will benefit the Parties and witnesses, as well as promote judicial efficiency by allowing a single court to coordinate the pretrial proceedings governing claims with these issues.

> **2.   Transfer Will Serve the Convenience Of The Parties and Witnesses and Will Promote the Just and Efficient Conduct of the Actions.**

The following four factors govern whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred cases:

1. The elimination of duplicative discovery;
2. The avoidance of conflicting rules and schedules;
3. The reduction of litigation cost; and,
4. The conservation of the time and effort of the parties, attorneys, witnesses, and courts.

Manual for Complex Litigation (Fourth), § 20.131, at 219.  These factors weigh in favor of transfer.

> **a.   Transfer Will Eliminate Duplicative Discovery.**

Because each of the Actions is based upon the same nucleus of operative facts, plaintiffs in each of the Actions likely will seek similar and overlapping discovery. *See In re Auto Body Shop*, 2014 WL 3908000, at *1-2 (J.P.M.L. 2014) (noting that transfer was appropriate to eliminate duplicative discovery when the actions shared a common factual core).  The Actions are also likely to involve complicated issues regarding the management of the Retirement Fund and corresponding investments, which will involve substantial expert discovery and *Daubert* briefing and hearings. That fact too militates in favor of transfer. *See, e.g., In re Natrol, Inc. Glucosamine/Chondroitin*, 2014 WL 2616783, at *1 (J.P.M.L. 2014).  Similarly, plaintiffs in each of the Actions are likely to seek to depose many of the same of Defendants' witnesses, including high-ranking employees of each Defendant entity, as well as others.  This factor likewise favors

8

centralization. *See, e.g., In re Auto Body Shop*, 2014 WL 3908000, at *1 (transfer to a single judge was beneficial because he or she could "structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands"); *In re Enfamil Lipil*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("Centralizing the actions will allow for the efficient resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and witnesses.").

Given the similarity of the Actions and the potential for duplicative discovery, transfer would inevitably conserve the parties' resources. *See, e.g., In re Air Crash at Dallas/Fort Worth Airport*, 623 F. Supp. 634, 635 (J.P.M.L. 1985). It would also conserve judicial resources, as transfer would assign responsibility for overseeing a pretrial plan to one judge rather than numerous judges. *See, e.g., In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004).

### b.    Transfer will Avoid Conflicting Rules and Schedules.

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Securities Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification).

Pretrial procedures will necessarily involve motions to dismiss, discovery motions, *Daubert* motions, and class certification motions. Conflicting rulings on these motions will cause unnecessary confusion and duplicative effort. Further, although only four district courts have cases now, given the sheer number of ministers and other church employees (approximately 5,000)[5]

---

[5] https://www.phillytrib.com/news/across_america/ame-church-suspends-retiree-payments-amid-investigation/article_61b9315d-4e15-5361-80a7-4ba6a69eaa9d.html

affected by AMEC's mismanagement of the Pension Fund in all parts of the country, there will likely be additional, similar cases filed throughout the United States.

Section 1407 transfer is the most efficient way to ensure that pretrial processes across all of these cases are uniformly litigated and adjudicated, thereby avoiding the situation where multiple courts reach contrary conclusions and potentially subject litigants to conflicting responsibilities and obligations.

      **c.**      **Transfer will Reduce Litigation Costs and Conserve Resources of the Courts and the Parties.**

Each of the Actions, and the tag-along actions likely to follow, will benefit from having a single transferee judge address and adjudicate issues related to discovery and pretrial motion practice. If the Actions are not transferred and consolidated, the same issues – including motions to dismiss, discovery motions, and summary judgment motions -- will likely be litigated in multiple courts. Additionally, absent coordination, duplicative depositions and other discovery of Defendants and third-parties would be necessary.

**B.**      **The Western District of Tennessee Is the Most Appropriate Transferee Forum.**

In selecting a transferee forum, the Panel appropriate considers the location of common defendants, relevant witnesses, and documentary evidence *See, e.g., In re Equifax, Inc.*, MDL No. 2800, 2017 WL 6031680, at *2 (J.P.M.L. Dec. 6, 2017) (transferring actions to the district where the main defendant is headquartered as "relevant documents and witnesses thus likely will be found there."); *In re Wells Fargo Auto Ins. Mktg. & Sales Practices Litig.*, MDL No. 2797, 2017 WL 4737285, at *1 (J.P.M.L. Oct. 19, 2017) ("it is alleged that key entities and individuals with direct responsibility for the alleged conduct in this litigation are located in [the transferee] district and, therefore, relevant documents and witnesses may be located there."); *In re Google Inc. St.*

*View Elec. Commc'ns Litig.*, 733 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010) (transferring cases to Northern District of California where "[t]he sole defendant, Google, is headquartered there, and most relevant documents and witnesses are likely located there."); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 381 F. Supp. 2d 1383, 1384 (J.P.M.L. 2005) ("relevant discovery will likely be found within this district, because Sears's corporate headquarters and many of its documents and witnesses are located there"); *St. Jude Med., Inc., Silzone Heart Valves Products Liab. Litig.*, MDL No. 1396, 2001 WL 36292052, at *2 (J.P.M.L. Apr. 18, 2001) (transferring litigation to district because "as the situs of the headquarters of the sole defendant in all actions, the district is likely to be a substantial source of witnesses and documents subject to discovery").

These factors strongly militate in favor of transfer to the Western District of Tennessee. AMEC's Department of Retirement Services is headquartered in Memphis, Tennessee; as such, its employees and records will be a substantial source of witnesses and documents subject to discovery in this litigation. *See, e.g., In re Allura Fiber Cement Siding, Prod. Liability Litig.*, 366 F. Supp. 3d 1365 (J.P.M.L. 2019) ("We conclude that the District of South Carolina is an appropriate transferee forum. One action on the motion is pending there, and the district is conveniently located for a number of parties and potential witnesses in the southeastern region of the country.").

The Western District of Tennessee has the first and second-filed cases. And, importantly, that District has none of the currently existing 183 MDLs. *See* Pending MDLS by District, Judicial Panel on Multidistrict Litigation, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-16-2022.pdf (last visited Apr. 1, 2022). The lack of MDLs in that District supports transfer there and

assignment to Judge Fowlkes because transfer would not burden that District nor Judge Fowlkes. *See e.g.*, *In re Teflon Products Liab. Litig.*, 416 F. Supp. 2d 1364, 1365 (J.P.M.L. 2006) (MDL centralization in Southern District of Iowa because it was a district that did not have "any other multidistrict litigation dockets, and … enjoys general docket conditions permitting the panel to effect the Section 1407 assignment to a court with the present resources to devote to the pretrial matters that this docket is likely to require."); *In re Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practices Litig.*, 844 F. Supp. 2d 1380, 1381 (J.P.M.L. 2012) (MDL centralization in Southern District of Florida because district presiding over fewer MDL dockets than other proposed districts); *In re Panacryl Sutures Products Liab. Litig.*, 574 F. Supp. 2d 1375, 1376 (J.P.M.L. 2008) (MDL Centralization in the Eastern District of North Carolina because "in the past, it has been underutilized as a transferee district."); *In re Fedex Group Package System, Inc., Employment Practices Litig. (No. II)*, 381 F. Supp. 2d 1380, 1382 (J.P.M.L. 2005) ("[C]entralization in this district permits the Panel to effect the Section 1407 assignment to a transferee district that is not currently assigned to other multidistrict litigation dockets and to a transferee judge who can steer this litigation on a steady and expeditious course.").

The Western District of Tennessee also serves the convenience of the Parties because it is centrally located and can be reached from any part of the country. Memphis International Airport is only 11 miles from the courthouse in the Western District of Tennessee and it has daily direct flights to major domestic hubs and destinations.[6]

## IV.    CONCLUSION

For the above-stated reasons, Movant respectfully requests that the Panel transfer the Actions set forth on the attached Schedule and all subsequently filed tag-along cases for

---

[6] https://flymemphis.com/nonstop-destinations/

coordinated or consolidated pretrial proceedings in the United States District Court for the Western District of Tennessee.

Dated:  April 2, 2022

        Respectfully submitted,

        /s/ *Gregory F. Coleman*
        Gregory F. Coleman
        **MILBERG COLEMAN BRYSON**
        **PHILLIPS GROSSMAN, PLLC**
        800 South Gay Street, Suite 1100
        Knoxville, TN 37929
        Tel: 865-247-0080
        gcoleman@milberg.com

        Matthew E. Lee
        Jeremy R. Williams
        Sarah J. Spangenburg
        **MILBERG COLEMAN BRYSON**
        **PHILLIPS GROSSMAN, PLLC**
        900 W. Morgan Street
        Raleigh, NC 27603
        Tel: 919-600-5000
        Fax: 919-600-5035
        mlee@milberg.com
        jwilliams@milberg.com
        sspangenburg@milberg.com

        *Counsel for Movant Rev. Pearce Ewing*