# U.S. District Court
## Eastern District of Virginia - (Richmond)
### CIVIL DOCKET FOR CASE #: 3:22-cv-00179

Wade et al v. African Methodist Episcopal Church et al  
Assigned to:  
Cause: 28:1332 Diversity-Breach of Fiduciary Duty

Date Filed: 04/01/2022  
Jury Demand: Plaintiff  
Nature of Suit: 380 Personal Property: Other  
Jurisdiction: Diversity

**Plaintiff**

**Derrell Wade**     represented by     **David Hilton Wise**  
Wise Law Firm, PLC  
10640 Page Avenue  
Suite 320  
Fairfax, VA 22030  
703-934-6377  
Fax: 703-934-6379  
Email: dwise@wiselaw.pro  
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Reuben J. Boyd**     represented by     **David Hilton Wise**  
(See above for address)  
*ATTORNEY TO BE NOTICED*

**Defendant**

**African Methodist Episcopal Church**

**Defendant**

**James Davis**

**Defendant**

**Samuel L Green**

**Defendant**

**Estate of Bishop McKinley Young**

**Defendant**

**Jerome V. Harris**

**Defendant**

**Newport Group, Inc.**

**Defendant**

**Safeco Insurance Co. of America**

**Defendant**

**Symetra Financial Corporation**

**Defendant**

**American Express Co.**

**Defendant**

**RSM McGladrey**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/01/2022 | 1 | Complaint ( Filing fee $ 402, receipt number AVAEDC-8325945.), filed by Derrell Wade, Reuben J. Boyd. (Attachments: # 1 Civil Cover Sheet)(Wise, David) (Entered: 04/01/2022) |
| 04/01/2022 | 2 | Proposed Summons by Reuben J. Boyd, Derrell Wade. (Wise, David) (Entered: 04/01/2022) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 04/02/2022 13:14:14 | | | |
| **PACER Login:** | Wbmllp2012 | **Client Code:** | 9999-01 JRW |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-00179 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| REV. DERRELL WADE and REV. REUBEN J. BOYD, JR., <br><br>*On Behalf of Themselves and All Others Similarly Situated*, <br><br>Plaintiffs, <br><br>v. <br><br>NEWPORT GROUP, INC., SYMETRA FINANCIAL CORPORATION, AFRICAN METHODIST EPISCOPAL CHURCH, REV. DR. JEROME V. HARRIS, BISHOP SAMUEL L. GREEN, SR., ESTATE OF BISHOP MCKINLEY YOUNG, BISHOP JAMES DAVIS, AFRICAN METHODIST EPISCOPAL CHURCH, AMERICAN EXPRESS CO., SAFECO INSURANCE CO. OF AMERICA, RSM MCGLADREY, DOE CORPORATIONS 1-10, AND JOHN DOES 1-10, <br><br>Defendants. | Case No. 3:22-cv-00179 <br><br>**CLASS ACTION COMPLAINT** <br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs Rev. Derrell Wade and Rev. Reuben J. Boyd, Jr., individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendants Newport Group, Inc., Symetra Financial Corporation, Rev. Dr. Jerome V. Harris, African Methodist Episcopal Church, Bishop Samuel L. Green, Sr., Estate of Bishop McKinley Young, Bishop James Davis, American Express Co., Safeco

Insurance Co. of America, RSM McGladrey, Doe Corporations 1-10, and John Does 1-10 and alleges the following:

## **INTRODUCTION**

1. This suit arises out of the breaches of fiduciary duties and negligent conduct of the Defendants in managing the AMEC Pension Fund ("Fund") and retirement assets of the below-defined Class. This class action seeks recovery on behalf of AMEC ministers and other employees who, collectively, have lost millions of dollars in career retirement savings due to Defendants' misconduct and mismanagement of the Fund.

2. Plaintiffs and the members of the class (collectively, "Plaintiffs") are ministers, bishops, officers, elders and other employees of AMEC or AMEC-related educational institutions or programs who have lost retirement funds that were invested in the Fund.

3. Pursuant to the terms of the Plaintiffs' employment, Defendants paid a percentage of the Plaintiffs' income to the Fund. Further ,many Plaintiffs chose to invest an additional specified portion of their income into the Fund.

4. As detailed below, Defendants directly owed duties to Plaintiffs, including fiduciary duties, to conduct due diligence, monitor investments, and oversee and audit the Fund and its trustee(s) or managers, in order to assure that that the Fund was protected and that Plaintiffs had access to their retirement funds when it came time for appropriate payments or withdrawals. At all times relevant, the Defendants had the power to monitor, review, dismiss, appoint, and control the

2

operations of various trustee(s) whose responsibility it was to act in the best interests of the Plaintiffs.

5. Defendants oversaw and controlled the investments in the Fund and did not adequately monitor or oversee the Fund. The Defendants in this action are each responsible for Plaintiffs' massive losses.

6. The loss to Plaintiffs' assets is a direct and proximate result of Defendants' failure to fulfill their duties to Plaintiffs.

**PARTIES**

7. Plaintiff Rev. Derrell Wade is a resident of Suffolk, VA. Rev. Wade serves as the Pastor for the Macedonia AME Church located in Suffolk, VA. He has served as an AME minister since 1994.

8. Plaintiff Rev. Reuben J. Boyd, Jr. is a resident of North Chesterfield, VA. Rev. Boyd serves as the Pastor of the Third Street Bethel AME Church located in Richmond, VA. Rev. Boyd has served in AMEC since 1988.

9. Defendant Newport Group, Inc. is a Florida corporation with its headquarters in Walnut Creek, California. Newport Group, Inc. serves as the administrator of the Pension Fund.

10. Defendant Symetra Financial Corporation was incorporated, and is existing, under the laws of the state of Delaware. It maintains its headquarters in Bellevue, Washington. Defendant Symetra Financial Corporation was identified on Plaintiffs' Personal Financial Statements as an administrator of the Plan.

11. Defendant AMEC and specifically its Department of Retirement

Services, which oversees the Fund, was incorporated, and is existing, under the laws of the state of Pennsylvania as a not-for-profit 501(c)(3) corporation. AMEC's principal place of business and its headquarters are in Nashville, Tennessee. The AMEC Department of Retirement Services maintains its principal place of business and headquarters in Memphis, Tennessee.

12.     11. Defendant Rev. Dr. Jerome V. Harris served as the Executive Director of the AMEC Department of Retirement Services until, upon information and belief, July 2021. Defendant Bishop Samuel L. Green, Sr. served as the General Commission Chair for the Department of Retirement Services from 2016-2021.

13.     Defendant Estate of Bishop McKinley Young served as the General Commission Chair for the Department of Retirement Services from 2008-2012.

14.     Defendant Bishop James Davis served as the General Commission Chair for the Department of Retirement Services from 2012-2016.

15.     Defendant American Express Co. is incorporated in the state of New York and headquartered in New York, NY. Defendant American Express Co. was identified on Plaintiffs' Personal Annuity Statements as an administrator of the Plan.

16.     Defendant Safeco Insurance Co. of America is incorporated in the state of Washington and is headquartered in Seattle, WA.

17.     Defendant RSM McGladrey is an audit, tax, and consulting firm headquartered in Chicago, IL, and incorporated in the state of Delaware. Defendant RSM McGladrey was identified on Plaintiffs' Personal Annuity Statements as an

4

administrator of the Plan and also was responsible for maintaining statements and sending statements to Plaintiffs and the Class.

18. Defendants Doe Corporations 1-10 are affiliates or subsidiaries of Defendants here that may be responsible for the conduct alleged herein. Such parties are named in a "Doe" capacity pending discovery in this case.

19. Defendants John Does 1-10 are affiliates or subsidiaries of Defendants here that may be responsible for the conduct alleged herein. Such parties are named in a "John Doe" capacity pending discovery in this case.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C 1331(d). The amount in controversy exceeds $5,000,000 and there are members of the proposed Class who are citizens of a State different from the State of citizenship of Defendants.

21. This Court may exercise personal jurisdiction over Defendants because Defendants conduct substantial business in this State, including conducting Fund business within the Eastern District of Virginia, and have engaged in the unlawful practices described herein in this District.

22. Venue is proper in this District under 28 U.S.C. 1391(b) because (1) Defendants reside and are subject to the Court's personal jurisdiction in this District and (2) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

5

I.      **History of the AMEC**

23.     The African Methodist Episcopal ("AME") denomination grew out of the Free African Society, which was established in Philadelphia in 1787.

24.     The first member church of AME was dedicated in Bethel and in 1794, and Richard Allen (a founding member of the Free African Society) was made pastor.

25.     Allen successfully sued in the Pennsylvania courts in 1807 and 1815 for the right of his congregation to exist as an independent institution.

26.     In light of the fact that other Black Methodists in middle Atlantic communities also encountered racism and desired religious autonomy, they met in Philadelphia to form a new Wesleyan denomination, the AME.

27.     Prior to the Civil War, the geographical spread of the AME Church ("AMEC"). was mostly in the Northeast and Midwest, with major congregations established in Philadelphia, New York, Boston, Pittsburgh, Baltimore, Washington, DC, Cincinnati, Chicago, Detroit, and other large Blacksmith's Shop cities.

28.     The AMEC eventually reached the Pacific Coast in the early 1950's with churches in various cities across California.

29.     During the Civil War and Reconstruction, AMEC membership boomed as AME clergy moved into the states of the collapsing Confederacy. By 1880, membership reached 400,000 because of AME's rapid spread below the Mason-Dixon line.

30.     Today, AMEC has membership in 20 Episcopal Districts in 39 countries on 5 continents. The work of the Church is administered by 21 active bishops and

6

nine General Officers who manage departments of the Church.

## II. History of the AMEC Retirement Fund

31. AMEC started a retirement fund in the 1960's for its employees. The Plan was initially a pension plan and required AMEC's ministers, bishops, officers, elders, and other employees of AMEC or AMEC-related educational institutions or programs to enroll.

32. Upon information and belief, the Plan was funded by a percentage of each eligible employee's annual income.

33. By the mid-1990s, the Plan was renamed the "African Methodist Episcopal Church Retirement Plan."

34. The Plan was principally funded by two methods of contribution: 1) AMEC employer entities (or AMEC itself) contributed a portion of eligible employees' income to the Fund on each individual employee's behalf; and, 2) eligible employees could elect to additionally contribute portions of their income to the Fund for their future retirement benefit.

35. The monies deposited into the Fund were managed by a trustee who was responsible for ensuring the Fund's assets were properly managed and protected for the benefit of the eligible employees whose earnings had funded the Plan.

36. Upon information and belief, AMEC retained the ability to "appoint and remove the Trustee from time to time" when "necessary for the proper administration of the Plan to assure that the Plan [was] operated for the exclusive

7

benefit of the [eligible employees] and their Beneficiaries."

37. After the initial creation of the Plan, upon information and belief, AMEC organized a separate retirement fund for ministers and church elders to be funded by AMEC directly.

38. Additionally, on or about January 1, 2003, AMEC created a 401(k) plan for eligible employees who wished to contribute to their retirement in this form of investment savings. To contribute, eligible employees reduced their earned compensation and directed their earnings to the 401(k) plan.

39. At some point in or around 2005, upon information and belief, AMEC consolidated the various retirement options into one organized retirement investment plan. The resultant retirement plan is believed to be currently named the "African Methodist Episcopal Church Ministerial Retirement Annuity Plan."

40. It is believed that the Plan is inclusive of all salaried employees of AMEC.

### III. Mismanagement of the Plan

41. From the early 200s until approximately June 30, 2021, the person in charge of management of the Plan's assets was Defendant Rev. Dr. Jerome V. Harris. Defendant Harris was supervised by AMEC's Department of Retirement Services and its Bishops who served as chairs of the department at various points in time (and are identified as Defendants in this case).

42. At all times relevant, Defendant Harris acted as Trustee of the Plan, making investment decisions and taking action with the blessing and authority of

8

AMEC's Bishops and other leaders and other Plan administrators.

43. Throughout the early 2000s and until the Relevant Time Period, Defendant Harris would routinely speak on the condition of the Plan funds and its investments.

44. While Defendant Harris's words often attempted to reassure Plaintiffs that their funds were being invested in a conservative, protected manner, audits and investigations revealed in 2021 and 2022 that AMEC (through the Defendant Bishops and others, including without limitation Defendants Doe 1-10) had failed to properly oversee or manage the funds invested by Plaintiffs into the Plan.

45. More specifically, these audits revealed that approximately $80,000,000 to $90,000,000 was unaccounted for by 2020 or 2021.

46. Details of imprudent, illogical, and risky investments of Plan assets followed, indicating that AMEC and the Plan administrators failed to adequately protect the interests of the Plaintiffs and their retirement savings. The backwards-looking audits and interest in investigating the safety of the Plaintiffs' retirement funds was too late.

47. Defendant Harris's and the AMEC and Plan directors' actions failed to reasonably or reliably protect the interest of the Plaintiffs in controlling their investments.

48. Upon information and belief, tens of millions of dollars of the Plaintiffs' retirement funds have been disastrously put into speculative and unsafe investments, to the harm of the entire group of Plaintiffs.

49. Upon information and belief, Defendant Harris retired in 2021. The current Executive Director of the Department of Retirement Services is Rev. Dr. James F. Miller.

## SPECIFIC ALLEGATIONS

50. Like all ministers within AMEC, Rev. Boyd has contributed and/or had contributions made on his behalf to the Retirement Fund throughout his career.

51. In July 2021 he attended the General Conference held in Orlando, FL, where he was told that there was approximately $150 million in the retirement plan and that based on his years of service to the church he was eligible to withdraw funds.

52. However, before he could do so, he received notice from AMEC that all disbursements were stopped pending an audit into the Fund.

53. To date, he is still unable to access his monies from the Fund.

54. Rev. Wade, similarly contributed and/or had contributions made on his behalf to the fund throughout his career and has vested benefits in the Fund. However, he also has been told that as much as 70-80% of those benefits are now "missing" and unavailable to be withdrawn or rolled into an IRA.

55. AMEC ministers, like Rev. Boyd and Rev. Wade, have wrongly been denied access to their retirement funds and missed out on significant returns that they should have enjoyed but for the Fund's mismanagement.

## CLASS ACTION ALLEGATIONS

56. Plaintiffs bring this action individually and as a class action pursuant

10

to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) seeking injunctive and monetary relief for Defendants' misconduct, as alleged herein.

### A. Class Definition

57. Plaintiffs bring this action on behalf of the following class:

Class:

All persons residing in the United States who are or were ministers or other employees of the AMEC and who have contributions in the Fund.

58. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses under Rule 23(c)(5), or modified in any other way.

59. Plaintiffs are members of the Class they seek to represent.

60. The misconduct challenged herein has been and is continuing in nature.

### B. Rule 23(a) and Rule 23(b)(3) Requirements

#### a. Numerosity

61. Upon information and belief, there are thousands of members of the proposed Class, who are geographically located throughout the United States.

62. The number of Plaintiffs are so numerous that joinder of all members is impracticable.

63. The identification of Class members is ascertainable through Defendants' maintained records.

#### b. Commonality

11

64. The prosecution of the claims herein will require the adjudication of numerous questions of law and fact common to the Class. The common questions of law and fact predominate over any questions affecting only individual Class members. The common questions include:

    a. Whether the Defendants breached their fiduciary duties to the ministers and other AMEC employees that contributed to and participated in AMEC's retirement plan;

    b. Whether the Defendants were negligent in failing to perform adequate due diligence in relation to the Fund;

    c. Whether and to what extent Plaintiffs were damaged by the Defendants' misconduct challenged herein;

    d. The appropriate measure of damages to which the Plaintiffs are entitled; and,

    e. Whether the Plaintiffs are entitled to accounting of the Fund.

### c. Typicality

65. All Class members were subject to the same misconduct as alleged herein, and their and injuries claims arise out of the same wrongdoing.

### d. Adequacy of Representation

66. Plaintiffs are adequate representatives of the Class.

67. Plaintiffs' interests are coextensive with those of the members of the proposed Class. Plaintiffs are willing and able to represent the proposed Class fairly and vigorously.

68. Plaintiffs have no interests antagonistic to, or in conflict with, the other Class members, and will fairly and adequately protect the interests of the Class.

69. Plaintiffs have retained counsel highly skilled in complex class litigation who are qualified, experienced, and able to conduct this litigation.

### e. Predominance & Superiority

70. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

71. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

72. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class.

73. AMEC has acted on grounds generally applicable to Plaintiffs and the proposed Class by maintaining a standardized practice of requiring eligible employees to invest a percentage of their paycheck each period into the Fund, and by preventing them from withdrawing monies from the Fund.

74. AMEC has acted or refused to act on grounds generally applicable to Plaintiffs and the proposed Class.

### f. Injunctive Relief

13

75. Injunctive relief is also sought in this case. Entitlement to injunctive relief flows directly and automatically from Defendants' breach of their fiduciary duty. In turn, entitlement to injunctive relief forms the factual and legal predicate for the monetary and non-monetary remedies for individual losses caused by Defendants' breaches of fiduciary duty and negligent conduct.

**CLAIMS FOR RELIEF**
**COUNT I**
**(BREACH OF FIDUCIARY DUTY)**

76. The foregoing paragraphs are realleged herein.

77. The Defendants had substantial discretion and control over the Plaintiffs' and other Class members' retirement funds (including the investment of such funds) and communications with Plaintiffs and other Class members.

78. This discretion and control gave rise to fiduciary duties of loyalty and care on the part of each Defendant to Plaintiffs and other Class members.

79. The Defendants occupied a superior position over Plaintiffs and other Class members with respect to their management and control over Plaintiffs' and other Class members' retirement funds.

80. The Defendants' superior position necessitated that Plaintiff and other Class members repose trust and confidence in the Defendants to fulfill their duties, and Plaintiff and other Class members reposed such trust by investing in the Funds.

81. As managers and professional advisors of the Fund, Defendants owed fiduciary duties to the Plaintiffs and other Class members.

82. The Defendants breached their fiduciary duties to Plaintiffs and other

14

Class members by failing to adequately manage the Fund and enable Plaintiffs and other Class members to withdraw monies therefrom.

83. This failure to adequately manage the Fund includes high-risk investments in the Motorskill Venture Group (a potentially fraudulent entity), high-risk real estate ventures, and other high-risk investments that have led to the loss or disappearance of substantial Plan assets.

84. Plaintiffs and other Class members have been damaged as a proximate result of Defendants' breaches of fiduciary duty and are entitled to damages, and appropriate equitable relief, including accounting.

## COUNT II
## (NEGLIGENCE)

85. The foregoing paragraphs are realleged herein.

86. The Defendants had a special relationship with Plaintiffs and other Class members that gave rise to a duty to exercise due care in the management of their assets invested in the Fund.

87. The Defendants knew or should have known that Plaintiffs and other Class members were relying on the Defendants to manage the investments entrusted to the Fund with reasonable care, and Plaintiffs and other Class members did reasonably and foreseeably rely on the Defendants to exercise such care by entrusting assets to the Fund.

88. The Defendants failed to exercise due care and thereby injured Plaintiffs and other Class members.

89. The Defendants failed to exercise the degree of prudence, caution, and

15

good business practice required of persons who obtain and manage retirement funds.

90. The Defendants also failed to perform adequate due diligence and monitoring with respect to the Fund and its investments.

91. If the Defendants had not been negligent, they would have discovered that Plaintiffs and other Class members had lost a substantial portion of their retirement funds.

92. As a proximate and foreseeable result of Defendants' negligence, Plaintiffs and other Class members have been damaged.

93. By reason of the foregoing, the Defendants are jointly and severally liable to Plaintiffs and other Class members.

## COUNT III
## (CONVERSION)

94. The foregoing paragraphs are realleged herein.

95. Plaintiffs and Class Members had an ownership or right to possession of their portions of the Fund based on the amounts they contributed, as well as the rates of return that the Fund assured Plaintiffs and Class Members that they had and would enjoy.

96. By contributing to the Fund, Plaintiffs and Class Members provided Defendants with control over the funds to invest and provide rates of return to Plaintiffs and Class Members.

97. In doing so, Defendants deprived Plaintiffs and Class Members of funds that they had possessory rights to, including the funds they contributed and the rates of return.

16

98. Plaintiffs and Class Members have been damaged as a proximate and direct result of Defendants' conversion of Plaintiff and Class Members contributions to the Fund with reasonable rates of return that they otherwise would have enjoyed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray the Court for the following relief:

1. That the Court certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. That the Court name Plaintiffs as Class Representatives and their counsel as Class Counsel;

3. That the Court enter an order finding that Defendants' conduct was a breach of their fiduciary duties;

4. That the Court enter an order finding that that Defendants' conduct was negligent as alleged herein;

5. That the Court award Plaintiffs and the other Class members damages and injunctive relief as appropriate, including but not limited to an accounting;

6. That the Court establish a constructive trust;

7. That the Court award Plaintiffs and the other Class members pre-judgment and post-judgment interest;

8. That the Court award Plaintiffs and the other Class members reasonable attorneys' fees, costs, and expenses;

9. That all costs of this action be taxed against Defendants; and

17

10. That the Court award Plaintiffs and the Class such other and further relief as this Court may deem just and proper.

11. Plaintiffs demand a trial by jury.

12. Plaintiffs reserves the right to amend the Complaint.

Dated: April 1, 2022.  Respectfully Submitted,

/s/ David Hilton Wise
David Hilton Wise, VSB #30828
Joseph M. Langone, VSB #43543
WISE LAW FIRM, PLC
10640 Page Avenue, Ste. 320
Fairfax, Virginia 22030
Tel: (703) 934-6377
Fax: (703) 934-6379
dwise@wiselaw.pro
jlangone@wiselaw.pro
*Attorneys for Plaintiffs*

\* motion for admission *pro hac vice* forthcoming